State vs. McQueen.

---

No. 14,291.

STATE OF LOUISIANA vs. GEORGE McQUEEN.

### Syllabus.

1.  There is no error in overruling the objection to a question propounded to a witness on re-direct examination, that "it is not re-direct examination," when the question objected to is reasonably proper in order to explain the testimony given on the cross-examination which has preceded.

2.  Or, in refusing a new trial, applied for on the ground of "newly discovered evidence," when, upon the hearing of the application, the witnesses named fail to furnish such evidence.

3.  Or, in refusing a new trial, applied for on the ground of "surprise," when the alleged surprise is said to have resulted from testimony given by a witness who was re-examined, at the request of the jury, with the consent of the counsel for the defendant, after the case had been submitted, and where no suggestion of surprise, objection, or application for relief were made at the time.

4.  Or, in refusing a new trial, applied for on the ground that a witness had testified as an expert without having first established his qualifications in that respect, where no such objection was made at the time, and no bill reserved, and where the alleged expert testimony, if any there was, was elicited by questions propounded by defendant's counsel.

APPEAL from the Criminal District Court, Parish of Orleans— Baker, J.

---

*Walter Guion*, Attorney General, and *J. Ward Gurley*, District Attorney (*Lewis Guion*, of Counsel), for Plaintiff, Appellee.

*Adams & Otero*, for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.  The defendant was convicted of having committed an assault upon, and having disabled the right eye of, the prosecuting witness, with the intention to maim, disable and disfigure, and he appeals from a sentence of imprisonment at hard labor.

It appears that Dr. C. H. Tebault, Jr., had been examined on behalf of the prosecution, and had been cross-examined by the defendant's counsel, and that, upon a re-direct examination by the district attorney, it was objected by the counsel for the defendant that the questions propounded were "neither suggested nor justified by the cross-examination, nor provoked by any matter elicited therein," and, the objection having been overruled, a bill of exceptions was reserved. The bill, itself, does not recite the questions which were objected to, but from the report of the testimony, which is annexed, it appears that, upon the cross-examination, the witness was asked the following questions, to-wit:

"Q.  What size bottle is that?

"A.  An ounce or an ounce and a half.

"Q.  I presume that sulphuric acid burns by contact?

"A.  Yes, sir.

"Q.  You spoke of two eyes being affected; she was not burned in the left eye?

"A.  Yes, sir; a few drops of the acid had gotten on the lid, without getting into the eye. It was what we call the first degree.

"Q.  You—with reference to the trouble of closing the eye—you say there is a possibility, after further treatment, of her eye being closed?

"A.  Yes, sir; the closing will be difficult, it will not close like the healthy eye it was.

"Q.  It will answer all purposes that nature intended the lid to perform?

"A.  Yes, sir.

"Q.  You say the probability is in that direction?

"A.  Yes, sir."

And that the State then asked the witness, "What is the

condition of the eye to-day?" to which the counsel for the defendant objected, that it was not re-direct examination. The argument which is now presented goes somewhat further, and seems to relate to other questions to which no objection was interposed. As the matter appears in the record, we find no error in the ruling of the trial judge. Whether it was competent on re-examination to propound any questions which might have been propounded on the examination-in-chief, or whether the district attorney was limited to such questions as were necessary to draw out an explanation of the meaning of the statements made by the witness on cross-examination, the particular question to which the objection was urged, was, legally speaking,, unobjectionable. No other bill was reserved, prior to the verdict, but a motion for new trial was filed upon the ground that the applicant was informed and believed that he would be able to prove by three medical men, named by him, that the right eye of the prosecuting witness was not permanently disabled, and that the evidence had been newly discovered, etc. And a supplemental motion was filed alleging, as additional reasons for setting aside the verdict, that the testimony of Dr. Tebault—given upon the occasion of the jury's returning into court, after they had retired to consider their verdict, in answer to questions propounded by the jurors, and upon cross-examination—took the defendant by surprise upon a material matter, to-wit: upon the question of the permanency of the disablement of the eye of the party injured, "which," as the motion recites, "in view of the testimony previously delivered by said Tebault, could not reasonably have been anticipated, and which, by reason of the stage reached in the trial, could no longer be contradicted or overcome." And "that there was error in permitting the prosecution to examine the said C. H. Tebault, Jr., M. D., as an expert in respect of the permanence of the disablement inflicted, etc., for the reason that there was no preliminary examination as to the qualifications of the said Tebault with a view to satisfy the court that the said witness thus called as an expert had the requisite qualifications and knowledge to allow him to testify in that behalf."

Upon the bill taken to the denial of this motion, the judge *a quo* made the indorsement, "The verdict was fully justified by the evidence and Dr .Tebault was recalled at the request of the jury and with the consent of the defendant."

The testimony of the witnesses, who were heard upon the application for new trial, fails to show that the eye of the prosecuting witness was not permanently disabled. On the contrary, it clearly establishes that the vision is seriously impaired, and, though the witnesses are unable to state the cause, they testify that the impairment might have resulted from the injury which the defendant is charged with having inflicted, as it might have resulted from other causes, and, as this ground of complaint has not been referred to in the argument, we presume that it has been abandoned.

It was admitted in the argument, and appears from the statement of the trial judge, that "Dr. Tebault was recalled at the request of the jury and with the consent of the counsel for the defendant." It, nowhere, appears, nor is it claimed, that the learned counsel pleaded surprise when the testimony was given, or made any application for delay or relief, and the record does not inform us of the character of testimony given.

As to the objection that Dr. Tebault was not qualified to testify as an expert with respect to "the permanence of the disablement inflicted," etc., we find upon examining his testimony that the questions of the counsel for the defendant, upon cross-examination, were the first that were propounded to the witness upon that subject, and that those that were subsequently asked by the district attorney were germane to the cross-examination.

We also find that Dr. Tebault was called in immediately after the injury had been inflicted and that he found that his patient had been so badly burned with sulphuric acid that part of the lid of one eye had been destroyed, so that grafting became necessary, and, whilst he did not profess to be an oculist, we take it that he was competent to testify, as a practitioner of medicine, whether permanent disfigurement was likely to result, or not, the oculists summoned by the defendant testifying that the lid is a part of the organ known as the eye. Beyond this, there was no objection made at the time, and no bill reserved, on the ground that the witness, not having qualified as an expert, was undertaking to give expert testimony.

Judgment affirmed.

Rehearing refused.